**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| **RAMESH SHARMA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civ. No. 03-1768 (TFH)** |
| | ) |
| | ) |
| **WASHINGTON METROPOLITAN** | ) |
| **AREA TRANSIT AUTHORITY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff Ramesh Sharma filed this action asserting claims for breach of fiduciary duty, breach of contract, and "tortious interferences with trust relationship." He also pleads violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). He alleges that defendants acted unlawfully and in concert to decrease the amount of his monthly retirement pension benefit. Before the Court is defendants' Joint Motion for Summary Judgment. The Court has carefully reviewed defendants' motion, plaintiff's opposition thereto, defendants' reply, and the entire record of this case. The Court GRANTS defendants' motion in its entirety. Plaintiff's ERISA claims are dismissed as being legally deficient; his Title VII claims and the related breach of contract claim are dismissed as being wholly unsupported by the record; his tort claims against the individual Washington Metropolitan Area Transit Authority defendants are barred by the doctrine of sovereign immunity; his remaining claims against the Washington Metropolitan Area Transit Authority and the Trustees of the

Retirement Plan are barred by the language of the documents governing the Retirement Plan; and his remaining claims against the Retirement Plan Committee defendants are rejected because he has offered no evidence suggesting that those defendants acted arbitrarily and capriciously in denying his claim for an augmented monthly pension benefit.

## I. Background

Plaintiff, a United States citizen of Asian-Indian origin, worked for the Washington Metropolitan Area Transit Authority ("WMATA") from 1983 through 2002. Sworn Decl. of Ramesh Sharma ("Pl.'s Decl.") ¶¶ 1-2. During this period, he served in both professional and managerial capacities. *Id.* In 1994, plaintiff initiated a series of Equal Employment Opportunity actions against WMATA, all of which the parties settled in 2001. *See id.* ¶ 2. The Agreement in Principle memorializing the settlement ("Settlement Agreement") required that plaintiff resign from WMATA. *Id.* In exchange, he received certain considerations from WMATA, including a sum designated as backpay. *See* Pl.s' Opp. Defs.' Mot. Summ. J. ("Pl.s' Br.") at 5; Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Br.") at 3.[1]

_____

[1] The terms of the Settlement Agreement are confidential and, as a result, defendants filed their motion under seal. Defs.' Joint Mot. Summ. J. at 1-2 n.1. Defendants redacted the specific amounts of money WMATA paid to plaintiff as part of the settlement of the prior Equal Employment Opportunity claim. Defs.' Br. at 3. In his brief, plaintiff revealed the amount of the backpay he received. Pl.s' Br. at 5. The Court will not disclose the amount of the backpay here, and notes that the fact of the backpay and the manner in which it was included in plaintiff's pension calculation is relevant to this dispute, and that the amount of the backpay is not.

WMATA offers a retirement pension plan ("Retirement Plan") for its employees. The Retirement Plan does not require employee contributions; it is funded by investment earnings with WMATA covering any difference between available funds and required pension payments. Defs.' Ex. 3A ("Plan Document") §§ 2.02, 2.03. Under the Plan Document, WMATA serves as Plan Sponsor, and delegates to the Board of Trustees of the Retirement Plan ("Trustees") the role of Plan Administrator. *Id.* § 11.03. The day-to-day administration of the Retirement Plan, in turn, is performed by the Retirement Plan Committee. *Id.* § 11.04.

While the Plan Document empowers the Trustees to establish the procedure for submitting, processing, and disposing of claims for benefits submitted by employees who participate in the Retirement Plan, it does not actually set forth the claims process. *See* Defs.' Ex. 3A § 11.10. Based on the parties' submissions, however, when an employee retires, WMATA transmits payroll and employment information to the Retirement Plan Committee, which then, in accordance with the Plan Document, issues a benefits determination. *See* Pl.'s Decl. ¶ 7; *see also* Defs.' Ex. 3A § 11.03. A key component of the benefits determination is the average compensation the employee earned during each of his or her final three years of employment ("Final Average Earnings"). Defs.' Ex. 3A § 13.15. An employee that is dissatisfied with the benefits determination may file a claim with the Retirement Plan Committee. *See* Defs.' Br. at 3. If the Retirement Plan Committee denies the claim, the employee can appeal to Trustees. *Id.* This appeal is heard as a formal hearing, is held on the

record, and is the final level of administrative review for benefits decisions.  *Id.*; *see* Defs.' Statement of Material Facts As To Which There Is No Genuine Dispute ("Defs.' SMF") ¶¶ 7-10.[2]

      To determine plaintiff's Final Average Earnings, the Retirement Plan Committee relied on information provided by WMATA.  *See* Pl.'s Decl. ¶¶ 7-8.  With respect to the backpay plaintiff received under the Settlement Agreement, the Retirement Plan Committee retroactively allocated the backpay amount over the entire ten-year period covered by the Settlement Agreement.  Defs.' SMF ¶ 8.  The backpay, which plaintiff received in March 2002, Pl.s' Br. at 5, was not spread evenly among the ten years, but was instead apportioned based on what salary plaintiff would have earned in each year he had received the promotions he claims WMATA unlawfully denied him.  Defs.' Br. at 3 n.3.  The effect of this allocation was that a greater percentage of the backpay was allotted to plaintiff's final three years of employment than if the backpay had been equally spread over all of the years governed by the settlement agreement.  *See* Defs.' Ex. 3F at 6:21-11:3, 17:15-18:7 (Jan. 23, 2003).  This allocation did not affect how much money plaintiff received as salary during his final three years of employment, nor did it affect how much money he received under the Settlement Agreement, but it did affect the computation of his Final Average Earnings.  *Id.*  Had the entire amount of the backpay been factored into his Final Average Earnings, the amount of his monthly benefit would have been higher.  Compl. ¶ 40.

---

[2] While plaintiff alleges that defendants failed to follow these procedures, Pl.'s Decl. ¶¶ 7-11, he does not seem to dispute that this was the general process to be followed.

Plaintiff contends that this computation was unlawful.  Compl. ¶ 1.  He maintains that the backpay constituted "compensation" within the meaning of the Plan Document and thus should have been included, in its entirety, in his Final Average Earnings.  Pl.'s Br. at 5-6.   Plaintiff has followed the prescribed administrative procedure—first filing a claim with the Retirement Plan Committee and then an appeal with the Trustees—and now turns to the Court for relief.  *Id.* at 6-10.  He alleges that defendants were motivated by "willful malice" and "hatred," and describes a conspiracy by which defendants acted in concert to deliberately cause plaintiff's monthly pension amount to be less than it would were it accurately computed in accordance with the Plan Document and the Trust Agreement. *Id.* at 2, 5-10.  Specifically, plaintiff contends that the Retirement Plan Committee failed to follow proper procedures in calculating his pension amount, *id*. at 8, that WMATA and the WMATA defendants improperly interfered with the Retirement Plan Committee's decision, *id*. at 9, and that the Trustees did not afford him a fair hearing, *id*. at 19.  Plaintiff also alleges improper self-dealings between WMATA, the WMATA Defendants, the Retirement Plan Committee, and the Trustees.  *Id.* at 16-18, 20.

## II.  Legal Standard

Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56.  If the submissions to the Court demonstrate that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  To succeed on its motion, the moving party need not

produce evidence to demonstrate the lack of material facts at issue, but may instead merely point to the lack of evidence before the court to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

While a court considering summary judgment must view all of the evidence in the light most favorable to the non-moving party, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the non-moving party may not simply make conclusory allegations unsupported by specific evidence. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1992). Instead, summary judgment is appropriate where there is no factual basis in the record to suppose the assertions made by the non-moving party. *See Ass'n of Flight Attendants—CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

### III. Analysis[3]

#### A. Plaintiff Has Failed to State a Claim Under ERISA Because ERISA Does Not Apply to Governmental Plans

Plaintiff brings two ERISA claims against the Trustees: Count V to recover benefits due under the Retirement Plan and Count VI for breach of fiduciary duty. Defendants argue that the Retirement Plan is a governmental plan, and that ERISA does not apply to government plans.

Congress enacted ERISA "to provide uniform federal regulation of employee retirement benefit plans and to make regulation of benefits an entirely federal concern." *Nat'l Rehab. Hosp. v. Manpower Int'l, Inc.*, 3 F. Supp. 2d 1457, 1459 (D.D.C. 1998). To achieve this end, the statute

---

[3] Plaintiff was without counsel when he initiated this action, so the Court liberally construes the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

reserves "to Federal authority the sole power to regulate the field of employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99 (1983) (citing legislative history). ERISA's broad reach, however, does not extend to plans maintained by a state government, a political subdivision of a state, or an instrumentality of a state. 29 U.S.C. § 1002(32) (2012); *see Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 41 (D.D.C. 2004).

Courts in this circuit and in the Fourth Circuit have held that the WMATA Retirement Plan is exempt from ERISA. *Akins v. Washington Metro. Area Transit Auth.*, 729 F. Supp. 903, 905 n.1 (D.D.C. 1990) (" . . . WMATA is a governmental entity and therefore exempt from the applicable ERISA provisions."); *Canady v. Washington Metro. Area Transit Auth.*, 909 F. Supp. 324, 327 (D. Md. 1995) ("ERISA preemption does not apply because the [WMATA Retirement Plan] falls under ERISA's governmental plan exception") (internal quotation omitted); *see also* D.C. Code § 9-1107 (2010) *et seq.* (WMATA is a governmental agency established by interstate compact).

Plaintiff acknowledges these authorities, but insists that the Retirement Plan is not a governmental plan within the meaning of ERISA. He urges first that the Retirement Plan cannot be a governmental plan because it neither was established nor is maintained by WMATA, and instead operates independently of WMATA. He is incorrect: the Plan Document makes clear that WMATA maintains the Retirement Plan. Defs.' Ex. 3A p.1 ("This Retirement Plan . . . adopted by [WMATA] . . . constituted a complete restatement and continuation of the WMATA Retirement Trust maintained by [WMATA] for [its] employees . . . .); *id.* § 2.03 ("[t]hat portion of the entire cost of the Plan which is not funded by investment earnings shall be paid by [WMATA] for all Participants"); *cf. Feinstein v. Lewis*, 477 F. Supp. 1256, 1260 (S.D.N.Y. 1976) (municipal and

school district employee welfare plans established in conjunction with labor unions are still

governmental plans within the meaning of ERISA).  Even if plaintiff was correct that *Atkins* and

*Canady* do not bar his ERISA claims, his argument that the Retirement Plan is not actually a

governmental plan would still fail because it is contrary to the clear terms of the Plan Document.

     Next, plaintiff argues that, if the Court holds that the Retirement Plan is exempt from the

requirements of ERISA, then the Retirement Plan will be left with no oversight, and will be allowed

"to be its own final authority."  Pl.'s Br. at 15.  This argument fares no better than the first.  It may be

true that construing the Retirement Plan as a governmental plan means that it will not be subject to

federal oversight.  But Congress clearly specified that governmental plans are not subject to ERISA,

29 U.S.C. § 1002(32) (2012), *see Shaw*, 463 U.S. at 99, and the Court declines plaintiff's invitation to

disturb that policy pronouncement.

     Plaintiff offers no justification for challenging the authorities that have held that the

Retirement Plan is not subject to ERISA, and for this reason summary judgment must be granted to

defendants on plaintiff's ERISA claims.[4]

### B. Plaintiff's Title VII Claims Fail Because Plaintiff Has Not Produced Any Evidence Demonstrating a Legally Sufficient Causal Nexus Between any Alleged Protected Activity and the Determination of His Pension Claims

     In Count VII plaintiff has alleged retaliation in violation of Title VII by WMATA, and in

Count VIII plaintiff pleads retaliation by the Retirement Plan Committee.  Count IV is styled as a

---

[4] Even if the Court held that the Retirement Plan was not a governmental plan under ERISA, plaintiff's claims would still fail because plaintiff has not shown an abuse of discretion on the part of the Retirement Plan Committee or the Trustees.  *Infra* Part III-E.

breach of contract claim in which plaintiff alleges that WMATA breached the anti-retaliation provision of the Settlement Agreement by actively undermining plaintiff's efforts to receive what he believes is the appropriate monthly pension benefit.[5]  Defendants argue that summary judgment is appropriate on these claims because plaintiff has offered no facts, evidence, or testimony demonstrating a legally sufficient causal nexus between plaintiff's protected activity and the allegedly retaliatory conduct.

       "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action."  *Pierson v. Washington Metro. Area Transit Auth.*, 821 F. Supp. 2d 360, 368 (D.D.C. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006)). Causality can be inferred from a reasonable temporal proximity between the protected activity and the retaliatory conduct.  *See Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004). An employer may offer a "some legitimate, non-[retaliatory] reason" for the adverse action, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981), after which the Court must assess "whether a reasonable jury could infer retaliation from all the evidence."  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

---

[5] Count IV is not technically a Title VII claim.  However, since this Count turns on the same question presented by the Title VII claims—did defendants commit retaliation?—the Court will assess Count IV alongside plaintiff's Title VII claims.  Defendants made a such a characterization of this claim in their brief, Defs.' Br. at 11-13, and plaintiff did not object.  Pl.s' Br. at 20-22.

Count VIII can be dismissed at the outset. Title VII prevents employers from engaging in discriminatory conduct against employees. To meet the statutory definition of "employee," there must be some employment relationship between the employer and the aggrieved party. 42 U.S.C. § 2000e(f) (2012); *see Schmidt v. Shah*, 696 F. Supp. 2d 44, 66-67 (D.D.C. 2010) (" . . . [plaintiff] was no longer employed by [defendant] when he submitted the materials to the EEO investigation and therefore does not qualify as an 'employee' under Title VII"). Count VIII is asserted against the Retirement Plan. Plaintiff did not work for the Retirement Plan at any point relevant to this lawsuit. Compl. ¶ 3. Consequently, plaintiff was not an "employee" of the Retirement Plan, and cannot bring a claim for retaliation against that particular defendant.

With respect to Counts IV and VII, defendants argue that plaintiff's retaliation claims fail because plaintiff has not adduced any facts from which an inference of causation can be drawn between the allegedly retaliatory conduct at issue and plaintiff's prior protected activity and because a reduction in pension benefits is not an adverse employment action within the meaning of Title VII. Here, the protected activity claimed by plaintiff is the signing of the Settlement Agreement on November 6, 2001, and the allegedly retaliatory conduct was the Trustees' February 7, 2003 decision denying plaintiff's benefits appeal. Even if the execution of a settlement agreement can constitute a protected activity, and even if the alleged reduction in his pension benefits constitutes a materially adverse action, plaintiff's claims fail because he has offered no evidence at all demonstrating a causal nexus between the execution of the Settlement Agreement and the reduction in the pension benefits. He relies instead on conclusory allegations, but these are insufficient to withstand summary judgment.

Nor can plaintiff allege causation by temporal proximity, because nearly fifteen months elapsed between his execution of the Settlement Agreement and the Retirement Plan's decision to deny his pension claim. *See Gustave-Schmidt* 360 F. Supp. 2d at 118-19 (three months is the outer limit for a temporal showing of causation). In his opposition brief, plaintiff refers to a "long series of communications including emails, memos, letters, internal complaints, etc." that occurred in December 2001, during and throughout much of 2002, and during January and March 2003 that were discriminatory and retaliatory. But these claims, unsupported by any document produced or testimony offered as part of the discovery process, are insufficient to withstand a motion for summary judgment. *Ass'n of Flight Attendants*, 564 F.3d at 465-66.

Because plaintiff was never an employee of the Retirement Plan, defendants are entitled to summary judgment on Count VIII, and because plaintiff has offered nothing but conclusory statements in support of his other retaliation claims, summary judgment is also appropriate with respect to Count IV and Count VII.

### C. Plaintiff's Tort Claims Against the Individual WMATA Defendants Are Barred by the Doctrine of Sovereign Immunity

In Count II and Count IX, plaintiff asserts claims for breach of trust and "tortious interferences with trust relationship," respectively, against WMATA, the individual WMATA defendants, and individual Trustees. Defendants argue that to the extent these claims seek relief from individual WMATA employees, those claims are barred by the doctrine of sovereign immunity.

The Eleventh Amendment to the Constitution bars suits by private parties against a state agency, absent a valid abrogation of immunity by Congress or waiver of immunity by the state or state agency. *See Alden v. Maine*, 527 U.S. 706, 728, 755-756 (1999). Section 80 of the Compact

creating WMATA "waives [WMATA's] sovereign immunity for torts committed in the conduct of any proprietary function, while retaining immunity for torts committed by its agents in the performance of a governmental function." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (internal quotation omitted). The immunity determination "often turns on whether the activity is 'discretionary' or 'ministerial' . . . ." *Id.* If the activity is discretionary and is "grounded in social, economic or political goals," then the activity is governmental and is shielded by sovereign immunity. *Id.*

Defendants argue that plaintiff's tort claims as asserted against the WMATA defendants fail because they are the beneficiaries of WMATA's sovereign immunity. Defendants point to a line of cases in which Courts have held that employment, salary, and benefits decisions made by WMATA are the sort of decisions to which the Compact's retention of sovereign immunity applies. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (" . . . the hiring, training, and supervision of WMATA personnel are governmental functions"); *Lombard v. Washington Metro. Area Transit Auth.*, No. 01-2475 (D.D.C. Feb. 21, 2003) (individual WMATA defendants enjoyed sovereign immunity in contract and tort case alleging that WMATA incorrectly calculated plaintiff's benefits eligibility and provided plaintiff an incorrect retirement estimate); *Smith v. Washington Metro. Area Transit Auth.*, No. 95-068, 1997 WL 182286, at *4 (D.D.C. Apr. 7, 1997) ("[p]laintiff fails to cite, and the court is not aware, of a single case in which WMATA has been held liable for torts arising from the administration of its personnel system").

Plaintiff attempts to distinguish the cases on which defendants rely by citing *Barbour v. Washington Metropolitan Area Transit Authority*, 374 F.3d 1161 (D.C. Cir. 2004). There, the D.C.

Circuit considered whether the trial court properly rejected WMATA's contention that it enjoyed immunity from plaintiff's claims under Section 504 of the Rehabilitation Act. The Court of Appeals upheld the trial court's determination that WMATA was not immune. *Id.* at 1170. The majority quoted the Civil Rights Remedies Equalization Act:

> [a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

*Id.* at 1164 (quoting 42 U.S.C. § 2000d-7(a)(1) (2006)).

Plaintiff argues that *Barbour* undermines the prior cases in which courts held that WMATA's personnel practices fell outside the scope of its sovereign immunity. This argument is incorrect. *Barbour* addressed a specific provision of a specific federal law that indicated specific instances in which sovereign immunity was waived with respect to an identified federal statute. Plaintiff claims that, because WMATA did not retain its immunity in *Barbour*, it must necessarily have waived it here, but that argument simply ignores *Barbour*'s factual context. The plaintiff here does not allege that WMATA receives federal funds (unlike in *Barbour*) and, even if he did, he points to no federal statute which conditions the receipt of those funds on WMATA's waiver of sovereign immunity (also unlike in *Barbour*). *Barbour* is therefore inopposite.

Next, plaintiff claims that the conduct of the WMATA defendants was so egregious that those employees cannot be shielded by WMATA's sovereign immunity. He asserts that "most of the individual Defendants intentionally acted and/or participated with others in continued malice, hatred, retaliation, negligence, failure to perform their official duties for the benefit of beneficiaries,

- 13 -

fiduciary duties, etc. in violation of federal and D.C. law." Pl.'s Br. at 15-16. He then recounts the extensive list grievances he asserts he suffered at the hands of the WMATA defendants, and argues that sovereign immunity simply cannot extend to such conduct. *Id.* at 17-18. Whether sovereign immunity would be waived were these allegations true is a question the Court need not reach, because plaintiff has offered no documents, testimony, or any evidence of any sort to support these allegations. There simply is no factual basis in the record to sustain plaintiff's allegations, and summary judgment is therefore appropriate. *Ass'n of Flight Attendants*, 564 F.3d at 465-66.

In light of the authorities holding that WMATA enjoys sovereign immunity when it engages in discretionary hiring, employment decisions, and decisions regarding "pension and retirement," *Burkhart*, 112 F.3d at 1209, and in light of plaintiff's failure to point to any factual basis in the record to sustain his claims, the Court will grant defendants' motion for summary judgment with respect to Counts II and IX as to the individual WMATA defendants.

### D. Plaintiff's Remaining Claims Against WMATA and the Trustees Are Barred by the Language of the Plan Document and Trust Agreement

Plaintiff has asserted an assortment of claims against WMATA and the Trustees: Count I for breach of fiduciary duty against the Trustees; Count II for breach of trust against WMATA and the Trustees; Count III for breach of fiduciary duty against the Trustees; and Count IX for "tortious interferences with trust relationship" against WMATA and the Trustees.[6]

_____

[6] Plaintiff's claims under Count II and Count IX against the Retirement Plan Committee are addressed separately. *Infra* Part III-E.

Defendants argue that all of these claims are barred by the language governing the Retirement Plan. In support of this contention, they cite to the Plan Document and the Trust Agreement.

According to section 12.10 of the Plan Document:

> **[t]he Committee, the Trustees, employees of the Authority or officers or members of the Board of Directors of the Authority will not be liable to any person, business entity, or government agency by reason of the terms, conditions, or agreements contained in the Plan or in the Agreement executed in connection herewith.** The Board of Directors, officers, employees or the Authority, the Committee, and the Trustees will be entitled to rely upon any and all certificates and report or opinions given by any duly appointed accountant, actuary, investment advisor or legal counsel (who may be counsel for the Authority), and will be fully protected against any action taken in good faith in reliance upon such tables, valuation, certificates, reports or opinions.

Defs.' Ex. 3A § 12.10 (emphasis added).

Defendants also quote from the Trust Agreement:

> [i]t is expressly understood and agreed by each employee who becomes a Participant hereunder, that **except for its or their willful neglect or fraud, neither the Authority nor the Trustees shall be in any way subject to any suit or litigation, or to any legal liability for any cause or reason or thing whatsoever, in connection with this Trust or its operations**, and each such employee hereby releases the Authority and all of its officers and agents from any and all liability or obligation.

Defs.' Ex. 3B § 10.10 (emphasis added).

Plaintiff contends that the Plan Document supports his position, and similarly directs the Court to section 12.10, though he emphasizes its latter portion:

> . . . [t]he Board of Directors, officers, employees or the Authority, the Committee, and the Trustees will be entitled to rely upon any and all certificates and report or opinions given by any duly appointed accountant, actuary, investment advisor or legal counsel (who may be counsel for the Authority), and **will be fully protected**

**against any action taken in good faith in reliance upon such tables, valuation, certificates, reports or opinions**.

Defs.' Ex. 3A § 12.10 (emphasis added).

Plaintiff also cites two provisions of the Trust Agreement and asserts that they create liability to the extent that defendants failed to act in good faith:

> [t]he Trustees shall not be liable for the making, retention or sale of any investment or reinvestment made by them, as herein provided, nor for any loss to, or diminution of, the Trust, unless due to their own negligence, willful misconduct, or lack of good faith.
>
> * * * *
>
> [t]he Trustees shall be fully protected in relying upon a certification by [WMATA] and shall be fully protected in acting upon any instrument, certificate or paper believed by them to [illegible in original document] and to be signed or presented by the proper person or person, and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Defs.' Ex. 3B §§ 7.01, 7.02.

Essentially, defendants contend that they can be liable under the Plan Document and Trust Agreement only for "willful neglect or fraud," Defs.' Br. at 10, while plaintiff urges that defendants can be held liable for any action not taken in good faith. Pl.'s Br. at 20.

Despite the assertions of the parties, section 12.10 of the Plan Document has no bearing on this dispute. The clear terms of the provision suggest that it relates to investment decisions made by or on behalf of the Retirement Plan, rather than to disputes between WMATA, the Retirement Plan, the Trustees, and Plan Participants, and, in fact, this provision does not even mention the Plan Participants at all. Moreover, the second part of section 12.10 addresses the right of WMATA, its employees, and the Trustees to rely on "all certificates and reports or opinions given by any duly

- 16 -

appointed accountant, actuary, investment officer, or legal counsel." Defs.' Ex. 3A § 12.10. While this section does protect those who administer the Retirement Plan, it does so when they act in reliance on advice or information they receive from investment advisors. That protection has no bearing on the claims plaintiff has asserted here.

For similar reasons, the Court rejects plaintiff's reliance on sections 7.01 and 7.02 of the Trust Agreement. Section 7.01 explicitly limits its liability language to the "making, retention, or sale of any investment or reinvestment . . . ." Defs.' Ex. 3B § 7.01. Here, plaintiff is not challenging the making, retention, or sale of any investment or reinvestment by or to the Trustees. Nor is section 7.02 relevant to this dispute. This section does not even speak of duties owed by the Trustees; it simply provides that they are free to rely on certifications issued by WMATA or its employees. *See id.* § 7.02.

Defendants' reliance on section 10.10 of the Trust Agreement, however, is proper. Under this provision, a suit by a Plan Participant against WMATA and its employees or the Trustees cannot lie but for willful neglect or fraud on the part of WMATA, its employees, or the Trustees. The section contains language that was not present section 12.10 of the Plan Document or section 7.01 of the Trust Agreement. It speaks specifically of lawsuits by Plan Participants, it is not limited to a certain type of litigation or lawsuit, and it specifies that the liability limitation reaches any "cause or reason or thing whatsoever, in connection with this Trust or its operation." Defs.' Ex. 3B § 10.10. By its clear terms it exempts the Trustees as well as WMATA and its employees from liability except for their willful neglect or fraud. As a result, the Trust Agreement bars suit against defendants that arise

from the operation of the Retirement Plan unless plaintiff can demonstrate that defendants acted with willful neglect or fraud.

Plaintiff has not met this burden. Here, he asserts that some defendants "repeatedly and maliciously interfered with" his efforts to enhance his pension. Pl.s' Br. at 19. He further claims that defendants acted with "bias, discrimination, retaliation, hatred, malice and negligence," and maintains that he was the victim of a conspiracy between defendants to artificially and unlawfully decrease his monthly pension amount. *Id*. at 17-19. But these are no more than conclusory allegations that lack any documentary, evidentiary, or testimonial support, and summary judgment is appropriate when no such support is offered.

Plaintiff does refer to the transcript of the January 23, 2003 Retirement Benefits Appeal Hearing, and claims that the events of that day indicate that at least one of the Trustees was unfairly biased against him. Pl.'s Br. at 19. The Court has reviewed the transcript of this proceeding, Defs.' Ex. 3F, and holds that, while the hearing was occasionally contentious, it does not evidence bias against or hostility toward plaintiff, and it therefore cannot insulate his claims from summary judgment.

The willful neglect or fraud standard, however, does not apply to plaintiff's claims against the members of the Retirement Plan Committee. Section 10.10 of the Trust Agreement, by its clear terms, limits its protections to the Trustees and to WMATA and its officers and agents. Defs.' Ex. 3B § 10.10. This limitation says nothing about the Retirement Plan or the members of the Retirement Plan Committee. That the Retirement Plan Committee is not mentioned in section 10.10 is all the more conspicuous in light of sections of the Plan Document that do expressly mention the Retirement

Plan Committee.  *E.g.*, Defs.' Ex. 3A § 12.10 (describing liability limitations with respect to the Retirement Plan Committee, the Trustees, WMATA, and WMATA's officers and board of directors).

Because plaintiff offers no proof of his claims, and instead offers no more than conclusory allegations, summary judgment for defendants is appropriate on Count I, Count II with respect to WMATA and the Trustees, Count III, and Count IX with respect to WMATA and the Trustees.

### E.  Plaintiff's Claims Against the Retirement Plan Committee Fail Because the Retirement Plan Committee's Decision was not Arbitrary and Capricious

Plaintiff's remaining claims are Count II for breach of trust and Count IX for "tortious interferences with trust relationship," both asserted against the Retirement Plan Committee defendants.  Defendants seek summary judgment on both counts, arguing that the Retirement Plan defendants cannot be liable because the Retirement Plan Committee's decision was not arbitrary and capricious.

With respect to Count II, as the Retirement Plan is a governmental plan and thus not subject to ERISA, the Court will apply the laws of the District of Columbia in assessing defendants' motion. Defs.' Ex. 3A § 12.11 (specifying that the Retirement Plan shall be administered in accordance with the laws of the District of Columbia); *accord Canady v. Washington Metro. Area Transit Auth.*, 909 F. Supp. 324, 327 (D. Md. 1995) (applying state law in resolving WMATA Retirement Plan pension dispute).  The District of Columbia follows the Restatement of Trusts to the extent that the D.C. Code and caselaw in the District of Columbia are otherwise silent.  *See Wright v. Sony Pictures Entm't, Inc.*, 394 F. Supp. 2d 27, 33 (D.D.C. 2005).  The Court has found neither a provision of the D.C. Code nor caselaw from the District supplying a standard for breach of trust claims, so it will adhere to the definition contained in the Restatement (Second) of Trusts.

Under that Restatement, which was in effect when plaintiff's claims arose, "a breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary". Restatement (Second) of Trusts § 201 (1959). "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1988) (quoting Restatement (Second) of Trusts § 187 1959). A trustee's decision is reasonable and, thus, not an abuse of discretion, if it was the result of a deliberate reasoning process and is supported by substantial evidence. *Buford v.UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 99-100 (D.D.C. 2003).

Here, plaintiff alleges that the clear terms of Trust Agreement imposed a duty on Retirement Plan Committee to act primarily for the benefit of Retirement Plan Participants, and that the Retirement Plan Committee failed to meet that standard when it awarded plaintiff a pension that did not capture the full amount of the backpay he received from WMATA prior to his retirement. Pl.'s Br. at 22.

For two reasons, the Court rejects plaintiff's argument. First, while plaintiff maintains that the members of the Retirement Plan Committee acted so negligently that they "miserably" failed in their duties under the Trust Agreement, Pl.'s Br. at 22, he provides no factual evidence, documents, or testimony that would support his allegations, and the Court will not allow the breach of trust claim to proceed in the absence of even a scintilla of evidence to sustain plaintiff's allegations.

Second, plaintiff maintains that the language of the Plan Document and the Trust Agreement are so clear that any failure to award him his desired pension necessarily constitutes a breach of trust.

Pl.'s Br. at 22-25.  At issue here is the Plan Document's definition of compensation:  " . . . the total basic compensation (excluding any overtime payments, special shift payments, bonuses, or other allowances) received by a Participant from [WMATA] during any calendar month."  Defs.' Ex. 3A § 13.09.

The Court rejects plaintiff's argument that the language of the Plan Document clearly compels the conclusion that he is entitled to have the full amount of the backpay he received included in his Final Average Earnings.  The Plan Document defines compensation as basic compensation, except for four categories of payments which are not compensation.  Defs.' Ex. 3A § 13.09.  Whether these four exclusions represent the entire universe of payments from WMATA to an employee that are not compensation rather than representing merely four examples of types of payments that are not compensation, the Plan Document does not say.  Nor does the Plan Document explain how, if at all, the word "basic" as used in section 13.09 modifies the meaning of compensation.  Presumably it does, otherwise that word would not be in the definition, but there is nothing in the Plan Document to suggest how compensation and basic compensation might differ.  The Court makes these observations to point out that the meaning of "compensation" as used in the Plan Document is not nearly as obvious or so clear as plaintiff attempts to characterize it.

Ultimately, the Retirement Plan Committee (and the Trustees) decided that a lump-sum backpay payment attributable to allegedly discriminatory conduct that predated plaintiff's claim for benefits by nearly a decade was not basic compensation within the meaning of the Plan Document.  Defs.' Ex. 3G.  This interpretation of the Plan Document is reasonable on its face.  While plaintiff observed that the Retirement Plan Committee was to act for the benefit of the Plan Participants, Pl.'s

Br. at 22, his argument ignores that the Plan Document also requires that the Retirement Plan Committee to award Plan Participants only the benefits to which they are entitled. Defs.' Ex. 3A § 11.03. Accepting plaintiff's claims would require imbuing the Retirement Plan Committee with an obligation to maximize a Plan Participant's monthly pension benefit, even at the expense of deviating from their duties to interpret and administer the Retirement Plan in accordance with the Plan Documents.

The retroactive allocation of plaintiff's backpay had the approximate effect of yielding a Final Average Earnings—and, thus, a monthly pension amount—that plaintiff would have received had the allegedly discriminatory conduct at issue in his prior Equal Employment Opportunity action not occurred. The backpay allocation, in other words, made him whole respect to his monthly pension benefit. Before the Retirement Plan Committee and the Trustees and, now, before the Court, he seeks a windfall, to receive a substantially higher monthly pension benefit than he would have received if WMATA had not allegedly discriminated against him in the past. The Retirement Plan Committee and the Trustees rejected this claim, and so does the Court.

With respect to Count IX, the Court is unaware of any statutory or common law claim for "tortious interferences with trust relationship" and, in any event, tortious interference claims (as, for example, with contractual relations or with prospective economic benefit) typically arise when a third party interferes with a contract or relationship already established between two other parties. *E.g.*, *Hunt v. District of Columbia*, 66 A.3d 987, 993 (D.C. 2013) ("the tort of interference with contractual relations does not lie when the defendant itself is a party to the contract"). Here, the Retirement Plan Committee is required to "direct [its] duties with respect to the Plan solely in the interest of the Plan's

participants and beneficiaries for the exclusive purpose of providing benefits to the Plan's Participants and beneficiaries . . . ." Defs.' Ex. 3A § 11.03. Just as a defendant cannot tortiously interfere with a contract to which it is a party, the Retirement Plan Committee cannot tortiously interfere with its own relationship with plaintiff.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will GRANT defendants' Motion for Summary Judgment [ECF No. 53]. An appropriate order will accompany this Memorandum Opinion.


July 17, 2014

_Thomas F. Hogan_
Thomas F. Hogan
Senior United States District Judge